## TOMLINSON *v.* JESSUP.

1. The Northeastern Railroad Company was incorporated by the legislature of the State of South Carolina in 1851 for fifty years, and the usual powers of railroad companies were granted to it. At that time a general law of the State was in existence, passed in 1841, which enacted that the charter of every corporation subsequently granted, and any renewal, amendment, or modification thereof, should be subject to amendment, alteration, or repeal by legislative authority, unless the act granting the charter or the renewal, amendment, or modification, in express terms excepted it from the operation of that law. In 1855 the legislature passed an amendment to the charter of the company, providing that its stock, and the real estate it then owned, or might thereafter acquire, connected with or subservient to the works authorized by its charter, should be exempt from taxation during the continuance of the charter. This act contained no clause excepting the amendment from the provisions of the general law of 1841. In 1868 the constitution of the State was adopted, which requires that the property of corporations then existing or thereafter created, shall be subject to taxation, except in certain cases, not affecting this case. The subsequent legislation of this State carried out this requirement and provided for the taxation of the property of railroad companies, and under it the property of the Northeastern Railroad Company was taxed; *Held,* that the taxation was legal and constitutional; that the power reserved to the State by the law of 1841 authorized any change in the contract created by the charter between the corporators and the State, as it originally existed, or as subsequently modified, or its entire revocation.

2. The object of the reservation was to prevent a grant of corporate rights and privileges in a form which would preclude legislative interference with their exercise, if the public interests should at any time require such interference, and to preserve to the State control over its contract with the corporators, which would otherwise be irrepealable and protected from any measures affecting its obligation.

8. Immunity from taxation, constituting a part of the contract between the government and the corporators or stockholders, was, by the reservation of power contained in the law of 1841, subject to be revoked equally with any other provision of the charter, whenever the legislature might deem it expedient for the public interest that the revocation should be made. The reservation affected the entire relation between the State and the corporation, and placed under legislative control all rights, privileges, and immunities derived by its charter directly from the State.

APPEAL from the Circuit Court for the District of South Carolina; the case being this:

Jessup, of New York, and owner of a number of shares

in the Northeastern Railroad Company, a corporation created in 1851 by the State of South Carolina, filed a bill in the court below against Tomlinson and others, officers of the State of South Carolina, to enjoin them from levying a tax on the property of the road.

The question was whether the property was liable to taxation under the legislation of the State.

The act incorporating the company contained a grant of the usual powers of railroad companies, and the charter was for the term of fifty years. At the time of its passage the 41st section of an act of the General Assembly, passed in December, 1841, was in force, as follows:

"It shall become part of the charter of every corporation, which shall, at the present, or any succeeding session of the General Assembly, receive a grant of a charter, or any renewal, amendment, or modification thereof (unless the act granting such charter, renewal, amendment, or modification shall, in express terms, except it), that every charter or incorporation granted, renewed, or modified as aforesaid, shall at all times remain subject to amendment, alteration, or repeal, by the legislative authority."[*]

The act of incorporation did not except the charter of the company from the operation of this section. The company received extensions of their powers and privileges at various times subsequently, but in no case did the amendatory acts except the company from the operation of that section.[†]

By an act, passed December 19th, 1855, entitled "An Act to amend the charter of the Northeastern Railroad Company, and for other purposes," it was enacted as follows:

"That the stock of the said company, and the real estate that it now owns or may hereafter acquire, which is connected with or subservient to the works authorized in the charter of the said company, shall be, and the same is hereby exempted from all taxation during the continuance of the present charter of the said company."[‡]

---

[*] Stat. at Large, vol. 11, p. 168.
[†] Id., vol. 12, pp. 176, 208–9 and 370.        [‡] Ib., p. 407.

This latter act did not except in terms the charter of the company from the provisions of the 41st section of the act of 1841, above recited.

The present constitution of South Carolina was adopted in 1868, and article 9, section 1, is as follows:

"The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, real, personal, and possessory, except mines and mining claims, the proceeds of which alone shall be taxed; and also exempting such property as may be exempted by law for municipal, educational, literary, scientific, religious, or charitable purposes."

Article 12, section 2, is as follows:

"The property of corporations now existing or hereafter created, shall be subject to taxation, except in cases otherwise provided for in this constitution."

On the 15th of September, 1868, the General Assembly passed an act entitled "An Act providing for the assessment and taxation of property," the first section of which declares

"That all real and personal property in this State, and personal property of residents of the State, which may be kept or used temporarily out of this State, with the intention of bringing the same into the State, or which has been sent out of the State for sale and not yet sold; all moneys, credits, investments, in bonds, stocks, joint stock companies or otherwise, of parties resident in this State, shall be subject to taxation."*

Subsequent acts provided specially for the taxation of the property of railroad companies, under which the officers of the State were proceeding to assess and tax the property of the Northeastern Railroad Company, when the present bill was filed.

The court below granted an injunction; at first temporary, and then final; and from the final injunction the officers of the State appealed.

---

* Stat. at Large, vol. 14, p. 27.

*Messrs. D. T. Corbin* and *D. H. Chamberlain, for the appellants; T. G. Barker, contra.*

Mr. Justice FIELD delivered the opinion of the court.

The constitution of South Carolina, adopted in 1868, declares that the property of corporations then existing or thereafter created, shall be subject to taxation, except in certain cases, not material to the present inquiry.  The sub-sequent legislation of the State carried out this requirement and provided for the taxation of the property of railroad companies; and the question presented is, whether the act of December, 1855, to amend the charter of the Northeastern Railroad Company, exempted the property of that company from such taxation.  The company was incorporated in 1851, and at that time a general law of the State was in existence, passed in 1841, which enacted that the charter of every corporation subsequently granted, and any renewal, amendment, or modification thereof, should be subject to amendment, alteration, or repeal by legislative authority, unless the act granting the charter or the renewal, amendment, or modification, in express terms excepted it from the operation of that law.  The provisions of that law, therefore, constituted the condition upon which every charter of a corporation subsequently granted was held, and upon which every amendment or modification was made.  They were as operative and as much a part of the charter and amendment, as if incorporated into them.

The act amending the charter of the Northeastern Railroad Company, passed in December, 1855, provided that the stock of the company, and the real estate it then owned, or might thereafter acquire, connected with or subservient to the works authorized by its charter, should be exempted from taxation during the continuance of the charter.  This act contained no clause excepting the amendment from the provisions of the general law of 1841.  It was, therefore, itself subject to repeal by force of that law.

It is true that the charter of the company when accepted by the corporators constituted a contract between them and

the State, and that the amendment, when accepted, formed a part of the contract from that date and was of the same obligatory character. And it may be equally true, as stated by counsel, that the exemption from taxation added greatly to the value of the stock of the company, and induced the plaintiff to purchase the shares held by him. But these considerations cannot be allowed any weight in determining the validity of the subsequent taxation. The power reserved to the State by the law of 1841 authorized any change in the contract as it originally existed, or as subsequently modified, or its entire revocation. The original corporators, or subsequent stockholders, took their interests with knowledge of the existence of this power, and of the possibility of its exercise at any time in the discretion of the legislature. The object of the reservation, and of similar reservations in other charters, is to prevent a grant of corporate rights and privileges in a form which will preclude legislative interference with their exercise if the public interest should at any time require such interference. It is a provision intended to preserve to the State control over its contract with the corporators, which without that provision would be irrepealable and protected from any measures affecting its obligation.

There is no subject over which it is of greater moment for the State to preserve its power than that of taxation. It has nevertheless been held by this court, not, however, without occasional earnest dissent from a minority, that the power of taxation over particular parcels of property, or over property of particular persons or corporations, may be surrendered by one legislative body, so as to bind its successors and the State. It was so adjudged at an early day in *New Jersey* v. *Wilson;*\* the adjudication was affirmed in *Jefferson Bank* v. *Skelly,*† and has been repeated in several cases within the past few years, and notably so in the cases of *The Home of the Friendless* v. *Rouse*‡ and *Wilmington Railroad* v. *Reed.*§ In these cases, and in others of a similar character, the exemption is upheld as being made upon considerations mov-

---

\* 7 Cranch, 164.    † 1 Black, 436.    ‡ 8 Wallace, 480.    § 13 Id. 264.

ing to the State which give to the transaction the character of a contract. It is thus that it is brought within the protection of the Federal Constitution. In the case of a corporation the exemption, if originally made in the act of incorporation, is supported upon the consideration of the duties and liabilities which the corporators assume by accepting the charter. When made, as in the present case, by an amendment of the charter, it is supported upon the consideration of the greater efficiency with which the corporation will thus be enabled to discharge the duties originally assumed by the corporators to the public, or of the greater facility with which it will support its liabilities and carry out the purposes of its creation. Immunity from taxation, constituting in these cases a part of the contract with the government, is, by the reservation of power such as is contained in the law of 1841, subject to be revoked equally with any other provision of the charter whenever the legislature may deem it expedient for the public interests that the revocation shall be made. The reservation affects the entire relation between the State and the corporation, and places under legislative control all rights, privileges, and immunities derived by its charter directly from the State. Rights acquired by third parties, and which have become vested under the charter, in the legitimate exercise of its powers, stand upon a different footing; but of such rights it is unnecessary to speak here. The State only asserts in the present case the power under the reservation to modify its own contract with the corporators; it does not contend for a power to revoke the contracts of the corporation with other parties, or to impair any vested rights thereby acquired.

DECREE REVERSED, and the cause remanded with directions to

DISMISS THE SUIT.