State, Morris & Essex R. R. Co., pros., v. Comm'r of Railroad Taxation.

THE STATE, THE MORRIS AND ESSEX RAILROAD COMPANY, PROSECUTORS, v. THE COMMISSIONER OF RAILROAD TAXATION.

1. A special charter may be repealed by a general law, without express words declarative of the intent to repeal. Repeals by implication are not favored; but the question is one of legislative intent, and the intent to abrogate the particular enactment in an earlier statute by a general enactment in a later statute, is sufficiently manifested where the provisions of the two statutes are so inconsistent that they cannot stand together.

2. In construing a statute containing a general enactment, and also a particular enactment, the effort must be, in the first instance, to harmonize all the provisions of the statute, by construing all parts together, and it is only when on such construction, the repugnancy of specific provisions to the general language is plainly manifested, that the intent of the legislature, as declared in the general enacting part, is superseded.

3. The reservation of the right of alteration and repeal in the charter of a corporation, has none of the characteristics of a mere power, which, when once exercised, is exhausted. Its effect is on the legislative grant itself, to prevent its becoming, what it otherwise might become, a contract with the state. An act containing such provision confers a mere privilege, subject at any time to be withdrawn or modified at the will of the legislature.

4. The legislature may, by a general statute, reserve the right of alteration and repeal, and such reservation as to future charters will have precisely the same effect as if inserted in each charter.

5. The sixth section of the general corporation act of 1846 (*Nix. Dig.* 168) is not limited to grants of corporate franchises and privileges made to corporations created after the passage of that act. It extends to every grant of franchise and privileges thereafter made to corporations which were created before the act was passed.

6. "An act to establish just rules for the taxation of railroad corporations, and to induce their acceptance and uniform adoption," (*Acts*, 1873, *p.* 112,) deals with two classes of corporations—the one, whose exemption from taxation is repealable; the other, those which have irrepealable contracts with the state on the subject of taxation. The former are made taxable under the first section of the act. To the latter, the legislature, by the tenth section, makes the offer to substitute the new mode of taxation for the former one, and to make a new contract in the place of the old one, if such corporations will consent to enter into the new arrangement.

7. The Morris and Essex Railroad Company was incorporated in 1835. The incorporating act contained a provision against taxation beyond

a per centage on the cost of the road, and also a reservation of the right to alter and repeal. By the third section of a supplement passed in 1865, a change was made in the time when the tax prescribed in the original act of incorporation should become payable, with a proviso that that section should not go into effect or be binding, until the company, by an instrument duly executed under its corporate seal, and filed in the office of the Secretary of State, should signify its assent thereto. A certificate of assent was duly filed. *Held*—(1.) That the provision in the supplement of 1865, that the third section should not · go into effect or be binding, until acceptance by the company, gave the company a mere privilege of choice, when the tax originally prescribed should become payable, and did not give it additional force as a contract with the state; and, (2.) That the provision for taxing the company under the supplement was repealed by implication by the general railroad tax act of 1873; and that the company is taxable in the manner prescribed in the first section of the latter act.

On *certiorari.* In matter of taxation.

Argued at February Term, 1874, before Justices BEDLE and DEPUE.

For the prosecutors, *Vanatta.*

For the defendant, *J. Weart* and *The Attorney-General.*

The opinion of the court was delivered by

DEPUE, J. By the third section of the supplement to the charter of the prosecutors, approved on the 23d of March, 1865, they were exempted from taxation, except the tax of one-half of one per centum on the cost of their road, which they were required to pay in lieu of all other taxes. *McGavisk* v. *The State, Morris and Essex R. R. Co., pros.,* 5 *Vroom* 509; *The State, Morris and Essex R. R. Co., pros.,* v. *Haight, Receiver,* 6 *Vroom* 40.

Under the provisions of an act of the legislature, approved April 2d, 1873, (*Acts,* 1873, *p.* 112,) the commissioner of railroad taxation returned to the comptroller a valuation of property owned by the prosecutors, and used and occupied by them for railroad purposes, amounting to the sum of $2,089,-520.00, with the view to subject the prosecutors to taxation

on that valuation for county, township and municipal purposes.

The property included in this return embraces the trunk line of the prosecutors from Hoboken to Phillipsburg, and is such as they were not liable to taxation upon, under the exemption in the supplement to their charter above referred to.

The question for decision is, whether the section of the supplement to the company's charter, which exempts them taxation, with the exception of the per centum to be paid to the state, is repealed by the act of 1873.

The eleventh section of the latter act declares that all acts and parts of acts inconsistent therewith are repealed. If the case rested solely on this repealing clause, *The State* v. *Branin*, 3 *Zab.* 485, and *The State* v. *Minton*, *Ib.* 529, would be decisive on the subject.

The contention of the counsel of the defendants is, that the provisions contained in the body of the act of 1873, are so inconsistent with the exempting clause of the company's charter, that a repeal of the latter results as a necessary implication, without any express declaration of an intention to repeal.

There is no rule of law which prohibits the repeal of a special charter by a general law. The *Mechanics and Traders Bank* v. *Bridges*, 1 *Vroom* 112. Nor is there any principle of law forbidding such repeal, without the use of express words declarative of the legislative intent to repeal the earlier statute. Repeals by implication are not favored. But the question is always one of legislative intent, and the intent to abrogate the particular enactment in an earlier statute by a general enactment in a later statute, is sufficiently manifested where the provisions of the two enactments are so inconsistent that they cannot stand together. The *King* v. *Trustees of Northleach and Witney Roads*, 5 *B. & Ad.* 978; *Daw* v. *Metropolitan Board of Works*, 12 *C. B.* (*N. S.*) 161; *The Great Central Gas Consumers Co.* v. *Clarke*, 13 *C. B.* (*N. S.*) 837; *Conservators of the Thames* v. *Hall*, *Law Rep.*, 3 *C. P.* 415; *Industrial School District* v. *Whitehead*, 2 *Beas.* 290.

The title of the act of 1873 is, "An act to establish just rules for the taxation of railroad corporations, and to induce their acceptance and uniform adoption." The act is prefaced by a preamble, which recites that, " *Whereas*, for the encouragement of railroad enterprise, laws creating and regulating railways in this state, usually provide for the payment by them, in consideration of their charter privileges, of a fixed rate upon their capital stock, or the cost of their works in lieu of all other public impositions whatever; *and whereas*, it is nevertheless contended, that the property of such corporations being largely acquired for or through the growth and extension of their prosperity, should contribute to the charges and expenses essential for municipal and county purposes; *and whereas*, it is desirable, in order to the avoidance of litigation and future dissatisfaction, that such municipal and county taxation shall be authorized, and that the same shall be permanently fixed and regulated."

By the first section it is enacted, "That all taxation upon all railroad companies occupying and using railroads in this state, whether as lessees or otherwise, shall hereafter be made as follows: *First.* Such companies shall pay upon the cost, equipment and appendages of said railroads respectively, a state tax, after such rate of taxation as may have heretofore been fixed by law upon such companies, or in default thereof, after the rate of one half of one per centum upon such cost. *Second.* Upon all the real property by them as aforesaid occupied, used or owned for the purposes of their road or otherwise, excepting their main stem or road bed and track not exceeding one hundred feet in width, such companies shall pay a county and municipal tax for the benefit of the counties, townships and cities respectively where the same is situate, after the rate of one per centum upon a valuation thereof, and of all improvements thereon, not by way of repairs, now or hereafter to be made, which valuation shall be made as hereinafter stated; *provided, however*, that at the termini of their said roads, each company hold a tract of land not exceeding ten acres, to be in one parcel, which, with the

buildings and improvements thereon, shall be free from the payment of county, township and municipal taxes whatsoever."

The language of this section, that "all taxation upon all railroad companies occupying and using railroads in this state, whether as lessees or otherwise, shall hereafter be made as follows," is so general and comprehensive that the legislative intent is left in no doubt. It includes in its provisions every company operating a railroad within the state, either under a charter for that purpose, or as lessees, or under any other arrangement, as a subject for taxation, and prescribes an uniform rule for imposing such taxation. An uniform rule must necessarily be the only rule applicable to the entire class of subjects embraced within the purview of the statute. Where the legislative intent is clearly manifested to establish the only rule that should govern, it operates by necessary implication as a repeal of all prior statutes in which a different rule was adopted. Both statutes being incapable of being executed, the earlier must yield to the later. *Industrial School District* v. *Whitehead*, 2 *Beas.* 290 ; *Sedg. on Statutes* 124–5.

The legislative intent to include all railroads within the scheme of taxation proposed in the first section of the act of 1873, is so clearly expressed as to admit of no doubt; and the mode of taxation therein established is so plainly repugnant to the special provisions for taxing the prosecutors under the supplement to their charter of 1865, that the power of taxation under both statutes cannot be exercised consistently with the legislative intent, as declared in the later statute. Under such circumstances the earlier statute is necessarily repealed by the later. *Daw* v. *Metropolitan Board of Works,* 12 *C. B.* (*N. S.*) 161.

But it was argued that the general language of the first section of the statute is qualified and limited by the tenth section of the same statute. That section is preceded by a preamble explanatory of the meaning of the body of the section. The preamble and section are in the following words: "*and whereas,* certain railroad corporations owning

or occupying railroads in this state, claim exemption from all taxation, whether state, county or municipal, further than is provided for by the charters or by special laws for their benefit now existing, which claims, even if legal, subject said corporations to public ill-will, and make it their interest to forego the same and agree to the scheme of taxation hereby established; now therefore, *be it enacted*, that any such railroad corporation may, within six months from the approval of this act, make and execute under their common seal and the signature of their president, and file in the office of the Secretary of State, a declaration in writing, surrendering all claim to exemption from taxation by them heretofore had or made, and accepting the provisions of this act in lieu thereof."

The contention was that this section provided specially for the taxation of railroad corporations having special provisions in their charters on the subject of taxation, without regard to the consideration whether such provisions were repealable or not; and that, therefore, on the rule of construction that where there is a particular enactment and a general enactment in the same statute, and the latter in its most comprehensive sense would include what is embraced in the former, the particular enactment must be operative and the general enactment must be taken to effect only such cases within its general language as are not within the provisions of the particular enactment. This, in substance, is a rule of construction adopted by Sir John Romilly, M. R., in *Pretty* v. *Solly*, 26 *Beav.* 610, and *De Winton* v. *Mayor of Brecon, Ib.* 533; *S. C.* 5 *Jurist*, (*N. S.*) 883, and is nothing more than another form of giving expression to the principle that the general legislation on a particular subject must give way to special legislation on the same subject. *State* v. *Clark*, 1 *Dutcher* 54; *State, Tainter, pros.*, v. *Mayor, &c., of Morristown*, 4 *Vroom* 61.

But this rule is subordinate to the cardinal principle for the construction of statutes, that they are to be so construed that if possible full effect shall be given to all parts of the statute. This latter rule must be applied to ascertain wherein language, which is specific, necessarily comes in conflict with

other language, which is general. The effort must, in the first instance, be to harmonize all the provisions of the statute by construing all parts together, and it is only when, on such construction, the repugnancy of specific provisions to the general language is plainly manifested that the intent of the legislature, as declared in the general enacting part of the statute, is superseded.

To give to the tenth section a construction which will embrace in its provisions all railroad companies having special provisions in their charters on the subject of taxation, irrespective of the question whether such provisions are repealable or irrepealable, will defeat the obvious purpose of the act. It is a historical fact that nearly every corporation of this kind existing in this state, has special provisions on this subject in its charter. Certainly, none are without such privileges whose property is of sufficient consequence to make it worth while to frame a comprehensive system of taxation such as is contemplated by the act of 1873, with a view to increase the public revenues.

The first paragraph of the preamble is general enough in expression to give countenance to such construction, but the succeeding paragraph shows that the mind of the draftsman was directed to corporations of that class, whose consent was necessary to effect the abrogation of the special laws enacted for their benefit, and in the body of the section, provision is made, not for taxation, but for the surrender of their special privileges, and the acceptance of the provisions of the act. Contrasting the language of this section with the general preamble prefixed to the entire act, referring to the usual course of former legislation for the encouragement of railroad enterprise, to provide for the payment of a fixed compensation in lieu of other taxes, and the positive enactment in the first section, that all railroads, &c., "shall pay upon the cost, equipment and appendages of said railroads, respectively, a state tax, after such rate as may have heretofore been fixed by law upon such companies," &c., in addition to the other tax imposed in that section, it is obvious that the tenth section is applicable only to such corporations as by irrepealable con-

tracts in their charters, are beyond the power of the legislature to compel submission to the taxation imposed by the first section.

On this construction the legislature must be regarded as dealing with two classes of corporations,—the one whose exemption from taxation is repealable; the other, those which have irrepealable contracts with the state on the subject of taxation. The former are made taxable by the first section of the act. To the latter the legislature, by the tenth section, makes the offer to substitute the new mode of taxation for the former one, and to make a new contract in place of the old one, if such corporations will consent to enter into the new arrangement.

Whether the proceedings under review should be affirmed or reversed, will depend then on the solution of the question, whether the prosecutors are of the first or the second of these classes of corporations.

The prosecutors were incorporated in 1835. (*Acts*, 1835, *p.* 25.) In the act of incorporation was a provision against taxation beyond a per centage on the cost of the road. But, by the twentieth section, the legislature reserved to themselves the right to alter, amend, or repeal, whenever they should think proper. This section was repealed by the supplement to the company's charter of March 2d, 1836, in which, by the seventh section, the legislature reserved to themselves the right to alter or amend this supplement, and the act to which it was a supplement, whenever the public good may require it. (*Acts*, 1836, *p.* 223.) The power of the legislature, under the reservation in the latter section, to repeal the provision in the original charter, exempting the company from general taxation, and to bring it within the operation of a general tax law, is settled by the decision of this court and of the Court of Errors, in *The State* v. *Miller*, 1 *Vroom* 368 ; 2 *Vroom* 521.

But it was argued by counsel, that this power of repeal, having been exercised by the tax act of 1862, was exhausted. This argument was based on a misconception of the legal

effect of a provision of this kind. It has none of the characteristics of a mere power. Its effect is upon the legislative grant itself, to prevent its becoming—what it otherwise might become—a contract with the state. This is clearly shown in the opinion of the Chief Justice, in *The State* v. *Jersey City*, 2 *Vroom* 575, 579. As was said by Mr. Justice Scudder, in *The State, Orange and Newark H. R. R. Co., pros.*, v. *Douglass*, 5 *Vroom* 85, the expression, that a charter of incorporation is a contract, must be understood to refer to a private corporation with an irrepealable charter. An act granting an exemption from taxation containing such provision for future alteration or repeal, confers a mere privilege, which is nothing more than a legislative concession voluntarily made, subject at any time to be withdrawn or modified at the will of the legislature. *Rector of Christ Church* v. *County of Philadelphia*, 24 *How.* 300 ; *The People* v. *The Comm. of Taxes of N. Y.*, 47 *N. Y.* 501.

It was further contended that, by the supplement to their charter, passed March 23d, 1865, the prosecutors obtained a contract with the state, which is unalterable by subsequent legislation without their consent.

The third section of the supplement of 1865 provides that the tax of one-half of one per cent., stipulated in the original act of incorporation, shall be payable at the expiration of one year from the time the road shall be open and in use to Phillipsburg, and annually thereafter, and shall be in lieu of all other taxation. By a proviso annexed, it was provided that this section should not go into effect or be binding upon the said company, until the said company, by an instrument duly executed under its corporate seal, and filed in the office of the Secretary of State, shall have signified its assent thereto. A certificate of assent was duly filed. (*Acts*, 1865, *pp.* 555, 961.) This act must be construed in connection with the original act of incorporation, which, by express reservation, the legislature had power to alter and repeal. In any case, it will be difficult to give to a supplement to a charter, in express terms repealable, the quality of irrepealability which the original act does not possess. It would seem that, when the

legislature exercises its power of alteration or repeal over the original act, a supplement, simply amendatory of its provisions, must, of necessity, go with it.

But, be that as it may, the supplement of 1865 was passed after the general corporation act of 1846. (*Nix. Dig.* 168.) By the sixth section of the latter act, it is provided that the charter of every corporation thereafter granted by the legislature, should be subject to alteration, suspension, and repeal, in the discretion of the legislature.

It is competent for the legislature to reserve the right of alteration and repeal by general statute; and such reservation, as to future charters, will have precisely the same effect as if inserted in the charter. Under a general statute of this description, charters of incorporated companies thereafter granted, are repealable, although there is no clause in the charter reserving such right. *Story* v. *Jersey City and Bergen Plank Road Co.*, 1 *C. E. Green* 14; *The State, Warren R. R. Co., pros.*, v. *Person*, 3 *Vroom* 134, 566; *Tomlinson* v. *Jessup*, 15 *Wall.* 454; *Miller* v. *The State, Ib.* 478.

The insistment of counsel is, that the sixth section of the general corporation law is only applicable to corporations created after that act was passed, and that, inasmuch as the charter of this company was previously granted, that section is inapplicable to any supplement to its charter, even if passed after the passage of the general corporation act. This construction would do violence to the plain language of the section of the general law under consideration. The language is not, that the power of alteration and repeal is reserved over charters of corporations thereafter created, but that the charter of every corporation thereafter granted shall be subject to such alteration, suspension, and repeal.

As applied to corporations, every grant of franchises is a charter. It may be a grant of the mere franchise of being a corporation, or a grant of powers to a corporation already in existence. In either case, the grant is the company's charter to exercise the rights and privileges, and enjoy the immunities granted. Bouvier defines the word "charter" to be, a

grant made by the sovereign, either to the whole people, or to a portion of them, securing to them the enjoyment of certain rights.    *Bouvier's Law Dic.,* " *Charter.*"    " All franchises," says Chief Baron Comyn, "are derived from the king, and ought to be claimed by charter."    *Com. Dig.,* " *Franchises,*" *A.* 71.    " Besides the charter of incorporation, a body politic has granted to it other charters, by which the crown, from time to time, adds to or modifies the powers," &c.    *Grant on Corp.* 13.

By the supplement of 1865, the prosecutors were authorized to lay out and construct two branch roads, and to acquire lands for that purpose by condemnation, and also to construct a bridge over the Passaic river.    The section concerning taxation, above referred to, is the thirty-fifth section of this act. Its provisions are not restricted to the works authorized to be constructed by the supplement, but extends to roads constructed under the original charter, and prior supplements. The act, in all its parts, whether relative to the construction of branch roads, or to taxation on new or former roads, is the company's charter for the exercise of the powers and franchises, and the enjoyment of all the privileges and immunities thereby granted.    As such, the sixth section of the general corporation act became incorporated into it, and all, or any of its provisions, whether they be such as authorized the construction of new roads, or such as provide for the taxation of the company on all its property, are made thereby subject to alteration or repeal.

Nor can I yield assent to the proposition that the provision that this section should not go into effect or be binding on the company until acceptance by the company gave it an additional force as against the state.

The sixth section of the corporation act is a general provision, applicable to all grants of franchises to corporations thereafter made.    The object the legislature had in view in its adoption was to retain control over legislative grants, that rights hastily granted, and without consideration, might be resumed when found to be impolitic.    Its effect on subsequent grants

of franchises has already been considered. Its provisions became incorporated into every grant of that kind subsequently made, unless the contrary intent clearly appears.

The power reserved is the sovereign power of legislation. The intent to relinquish this sovereign right in any particular case, and surrender it in favor of any corporation or individual, will not arise by intendment. It can only be derived from express language or unequivocal import, and it must appear that the legislature not only intended to grant the franchise, but also to surrender the power of alteration and repeal.

Taxation of the prosecutors was in the first instance provided for by the fifteenth section of their act of incorporation. The taxation therein stipulated was subject to alteration and repeal when the act of 1865 was passed, and the consent of the company was not necessary to give effect to any new mode of taxation the legislature might devise. The company had not then an irrepealable contract to rest upon. All the legislature had conceded was the privilege of relief from the general taxation, so long as it abstained from imposing other taxation.

The supplement of 1865 did not alter the rate or quantum of taxation. The only change made was in making it payable when the road should be open and in use to Phillipsburg, instead of when the net proceeds amounted to seven per centum on its cost, and the option was given to the company to elect at which period payment should commence, as might be most conducive to its interests. A new privilege of choice when the tax originally prescribed should become payable, was merely accorded to the company. There is not, in the language used in these provisions, anything indicating an intent to make the new arrangement more permanent than the former one, much less that clear and decisive expression of legislative intent, which is necessary to effect a surrender of the sovereign power of legislation, especially on the subject of taxation. The additional language, that such tax " shall be in lieu and satisfaction of all other taxation or imposition

State, United R. R. & Canal Co., pros., v. Comm'r of Railroad Taxation·

whatsoever, by or under the authority of this state, or any law thereof," in legal effect is the same as the proviso annexed to the fifteenth section of the act of incorporation. In numerous cases it has been held in this state that similar language has not the effect to create a contract in charters in which a power of alteration and repeal is reserved. As has already been shown, the effect of the sixth section of the general corporation act upon charters passed after its adoption, is to save to the legislature the same power of alteration as if its provisions were expressly embodied in such acts.

The prosecutors not having an irrepealable contract with the state on the subject of taxation, are liable to taxation under the first section of the act of 1873, and the proceedings should be affirmed.

Justice BEDLE concurred.