IN THE MATTER OF DAVID R. POWELL.

January 30, 1878.

The charter of the Company of Firewardens of the City of St. Louis, an incor-- porated body, granted its members who had served as firewardens seven. years' exemption from jury duty, but expressly reserved the power of re- peal. *Held*, that the members who had served seven years did not thereby acquire vested rights to exemption from jury duty; that the repeal of the exemption clause did not impair the obligation of contracts; and when. repealed, the members were liable to jury duty.

WRIT of *habeas corpus.*
*Petitioner remanded to the custody of the sheriff.*
MEAD & McCABE and S. REBER, for petitioner.
R. E. ROMBAUER, for the sheriff.

BAKEWELL, J., delivered the opinion of the court.

The petitioner is brought into court on a writ of *habeas corpus*. He alleges that he is unlawfully restrained of his liberty by the sheriff of the city of St. Louis.

It appears from the return, that the petitioner was sum-- moned as a juror in the St. Louis Circuit Court, and claimed to be exempt from jury duty as a member of the Firewardens. of the City of St. Louis, an incorporated body. He showed the act of incorporation, approved Feb. 20, 1845, and also- the amended act, approved March 5, 1851. Local Laws. Mo. 114, Acts 1851, p. 481. By the original act, it is made the duty of the members of the Company of Firewardens to- attend all fires in the city and its environs, to rescue and secure property, and preserve the peace ; and the members. are exempted from jury duty whilst active members. By the amended act, no member is compelled to serve more than seven years ; and, on receiving a certificate of such ser- vice, is forever exempted from jury duty. The petitioner produced his certificate in conformity with the act. He also showed that the members of the company voluntarily organized, and have, without reward, been engaged in the

active discharge of their duties as firewardens ever since its organization, and that he has been and is an active member. He showed a sufficient reason for not having claimed his exemption before the jury-commissioner. The Circuit Court found the facts on which the exemption was claimed to be true ; but held that they furnished no sufficient ground for exemption, and directed Powell to remain in court, subject to jury duty. This Powell refused to do, and he was thereupon adjudged guilty of a criminal contempt and committed to the custody of the sheriff, to be delivered to the jailer and kept in jail for twenty-four hours.

By the act of May 15, 1877 (Acts 1877, p. 280), all laws in reference to exemption from jury duty, in conflict with the general jury-law of the State, are repealed. The question is, whether or not the petitioner acquired, by virtue of the facts recited, a vested right to exemption from jury duty. It is contended by the petitioner that the acts recited were a contract between the State and the corporation and its members ; that the right to exemption became vested under those acts, and cannot be divested by subsequent legislation, because the contract is under the protection of the Constitution of the United States.

It is settled law that a private charter is a contract between the government and the company to which it is granted, and, as such, is secured from violation by the State conferring it. It is also the law that all express collateral stipulations inserted in a charter, though not necessary to the existence and objects of the corporation, which are restrictions of the legislative power of the State, are also contracts.

But in this case the charter of incorporation upon which the petitioner relies provides (sec. 5th) at " the General Assembly may, at any and all times, alter or repeal the same." As the law authorized the government to change the charter, there was an implied assent to all such changes on the part of every member of the company.

Missouri, in common with Illinois, New York, and Massa-

chusetts, has adopted the extreme doctrine as to the right of the State to alter charters. And as it is settled in Missouri, after much discussion, that the reserved right to alter a charter authorizes a corporation, by consent of the Legislature, to engage in a new and different enterprise, or to extend the old one without the consent of all the shareholders, we think it cannot be successfully contended that an exemption such as that we are now considering cannot be withdrawn, after the services by which it was purchased have been rendered, when the party claiming exemption had express notice, before he enrolled as a firewarden, that he held the exemption from jury duty merely at the good pleasure of the State. *Pacific R. Co.* v. *Hughes*, 22 Mo. 291; Green's Brice's Ult. Vir. 609, 84, n.; Sedgw. Const. Law, 620, marg.

Our attention is called to *Woodruff* v. *Trapnall*, 10 How. 190. But that was a different case. There, the State of Arkansas chartered a bank whose capital belonged to the State and whose officers were appointed by the Legislature. The act of incorporation made the bills of the bank receivable for all debts due the State. This section was repealed in 1845; and in 1847, Arkansas refused to receive, in satisfaction of a judgment against a defaulting treasurer, the notes of the bank issued before the repeal. The Supreme Court of the United States compelled Arkansas to stand to her contract and take the notes. Four judges dissented.

But, in 1872, the same court held (*Tomlinson* v. *Jessup*, 15 Wall. 454) that, where South Carolina granted to a railroad company a charter giving immunity from taxation, though this constituted a contract between the State and the shareholders and the corporators, yet, as at the same time the charter was granted there was an existing law of the State providing that any charter should be subject to repeal or amendment, the immunity might be revoked at the will of the Legislature.

We are referred by counsel for the officer making return to the writ in the present case, to a case in Massachusetts

(*The Commonwealth* v. *Bird*, 12 Mass. 460), in which it was held that the Legislature has power to revoke an exemption from serving in the militia, before granted to all who, when required to do militia duty, should have held the office of a subaltern, or officer of higher rank, under the government of any State or of the United States. Here was a case of a grant, in consideration of public services performed by the individual, absolutely retracted, though no power of repeal was expressly reserved. Yet from motives of public policy the act was sustained.

The State may require, in a crisis of her future, the services of an able-bodied citizen whose militia duty has been commuted in a time of peace. And to hold that he can never be compelled to render service to his government, on account of some legislative grant, was regarded by the court as carrying such an exemption to an extent neither contemplated by the Legislature nor the citizen. But jury duty is a matter of every-day necessity. The State needs her citizens in the one capacity no less than in the other; and public policy requires that those citizens best fitted for the discharge of a public duty, upon the proper performance of which the rights of all citizens depend, should not be permitted wholly to withdraw themselves from liability to its performance. The question might present more difficulty if, as in the Massachusetts case, there had been a grant of exemption without any reservation of the power of repeal. But in the case before us, whilst every motive of public policy exists in its fullest force, there can be no question whatever of the violation of any vested right. No right had vested, for the services rendered were rendered with express notice that the exemption granted might be withdrawn at the pleasure of the State. The contract was made subject to legislative amendment or repeal, and might be disregarded by any subsequent Legislature; for it is a maxim that *unumquodque dissolvi potest eo ligamine quo ligatum est.*

2. It is, however, contended that petitioner is exempt

from jury duty under the provisions of the act of March 12, 1870 (Wag. Stat. 798, sec. 4), as a "member of a voluntary fire-company, duly organized and ready for active service."

We do not think a company of firewardens, organized to keep order and protect property in case of fire, comes within the meaning of the language of this section. A fire-company means a company of men organized to extinguish fires. Nor does it appear how, under our present municipal government, any voluntary fire-company can be recognized as such which does not derive its authority from, and act in subordination to, the municipal government, and which is not a regular branch of the fire-department of the city. Chart., art. 3, secs. 20, 21; art. 11, sec. 1. The fire-department of St. Louis is placed by law under the control of a chief officer, who alone has the employment and appointment of officers and employees; and these officers and employees are to be provided by ordinance, and not by voluntary organization. *Id.*, art. 9, sec. 1.

Without going into the question how far it is competent for the Legislature to bargain away certain powers of the State, and her control over and right to the services of her citizens, we are clearly of opinion that, the right to repeal the charter under which the exemption claimed in this case was granted having been reserved in the charter itself, there was no breach of faith and no violation of contract in its repeal; that it was competent for the Legislature, therefore, to repeal this charter; and as it appears that the provision under which the petitioner claims to be exempt from jury duty has been repealed, we hold that he was properly committed for contempt in refusing to obey a lawful order of the Circuit Court; and, with the concurrence of all the judges, the petitioner will be remanded to the custody of the sheriff of the city of St. Louis.