THE NEW YORK CABLE RAILWAY COMPANY, Appel-
LANT, *v.* THE CHAMBERS STREET AND GRAND
STREET FERRY RAILROAD COMPANY, Respondent.

*Street surface railways — construction of the provision prohibiting the construction
of a railroad in streets where one is already laid —1884, chap. 252 — power of the
legislature to repeal or alter charters.*

Prior to the passage of chapter 252 of 1884, providing for the construction and
operation of street surface railroads in cities, the plaintiff had been organized
as a corporation under chapter 606 of 1875, providing for the construc-
tion and operation of steam railways, and had been authorized by the com-
missioners, appointed by the mayor of the city of New York, to lay its tracks
in certain of the streets of the city, among which was Chambers street. It had
not then procured the consents required by the said act, nor had it constructed
any portion of its road. This action was brought by it to restrain the defend-
ant, a corporation formed under the said act of 1884, and authorized to lay its
tracks in the same street, from so doing upon the ground that the plaintiff had
acquired the exclusive privilege of there laying and operating a railway.
*Held,* that the action could not be maintained for two reasons:
*First.* Because the acts under which the plaintiff was incorporated did not pro-
hibit the construction of another street surface railway upon the surface of any
street over, under or through which the right to construct a railway might,
under its provisions, be acquired.
*Second.* That even the act of 1884 does not prohibit the construction of a street
surface railroad upon a street in which another company claims the right
to construct a railroad which at the time has neither in whole or in part
been made, it only prohibits the construction of any surface railroad upon
a street where a like railroad has already been laid, without the consent of the
company owning and maintaining the same.
That the legislature had power to pass the act of 1884, even though by so doing it
altered the terms of the plaintiff's charter, as express power to alter or repeal
the same was reserved as well by the act under which the plaintiff was formed,
as by the Revised Statutes and the Constitution of the State.
*It seems,* that under the Constitution of this State, the legislature has no power to
make, with any corporation, a contract either in its charter or in the act incor-
porating it, or by any other form of legislation which can prevent a subsequent
legislature from altering, modifying or wholly abrogating its charter.

Appeal from an order denying a motion to continue a temporary
injunction which restrained the defendant from constructing or
operating a railroad upon Chambers street and other streets in the
city of New York.

The appellant claims to be a corporation duly incorporated by commissioners appointed under the provisions of chapter 606 of the Laws of 1875, and that such commissioners laid out for it a route upon Chambers street, and the other streets mentioned in the complaint, upon which defendant proposes to construct and operate its street surface railway. It also claims that the location of a route for it upon the streets in question by the commissioners, under the provisions of the act of 1875, gives it the exclusive right to construct and operate a railroad upon that route.

The complaint concedes that the plaintiff has never obtained either of the consents required by the Constitution and the act of 1875, as a condition precedent to the right to construct or operate a street railway. The complaint also admits the existence of the respondent as a corporation created under the act of 1884 (chap. 252).

*Robert Sewell* and *Everett P. Wheeler*, for the appellant.

*William C. Trull*, for the respondent.

DANIELS, J.:

It would probably be a sufficient answer to the application of the plaintiff for an injunction that neither chapter 606 of the Laws of 1875, nor the acts afterwards passed amending it, under which the plaintiff claims to have derived its authority as a corporation, prohibits the construction of another street surface railway upon the surface of any street, over, under or through which the right may be acquired to construct a railway under their provisions. The act in this respect differs from chapter 252 of the Laws of 1884. But even that has not prohibited the construction of a street surface railroad upon a street in which another company may have claimed the right to construct a railroad, which at the time has neither, in whole or in part, been made. This latter act, by section 14, has prohibited the construction of any surface railroad upon a street where a like railroad has already been laid, without the consent of the company constructing and laying it. But as the plaintiff has constructed no road upon any part of the route in controversy, it is not within the protection of this section of the act of 1884; and as long as no more has been done than to complete the alleged organization of the plaintiff under the act of 1875 and those

afterwards enacted to amend it, and the ineffectual effort to obtain the consent of the owners of the property along the route, it was within the power of the defendant under the act of 1884, with the consent of the local authorities and the property owners, to lay and construct its railroad along this route.

It has been further urged in support of the appeal, that to permit this to be done would impair the obligation of the contract made with the plaintiff by means of its charter, and would consequently involve the exercise of authority forbidden by subdivision 1 of section 10 of article 1 of the Constitution of the United States.

The prohibition is that declaring that no State shall pass any law impairing the obligation of contracts, and that the charter of a private corporation is a contract is not only maintained by the recent decisions of the Supreme Court of the United States in the cases of *The New Orleans Gas-Light Company* v. *Louisiana Light and Heat Producing Company,* and *The Louisville Gas-Light Company* v. *The Citizens' Gas-Light Company,* but by numerous other authorities. It does not follow, however, from anything contained in either of these decisions that the legislature of this State could not by the act of 1884, confer the right upon the defendant to construct and operate a surface railroad upon the streets in controversy. For in the two cases recently decided by the Supreme Court of the United States, the right to alter, repeal or change the charters of the companies does not appear to have been reserved ; while in this State it was provided, when the Revised Statutes were adopted and went into effect, that " the charter of every corporation that shall hereafter be granted by the legislature, shall be subject to alteration, suspension and repeal in the discretion of the legislature." (1 R. S., 600; § 8.)

This provision of the statute was carried into and made a part of the Constitution of this State, which was adopted on the 3d of November, 1846. It was then declared, as a part of the constitutional law of the State by section 1 of article 8, that " corporations may be formed under general laws, but shall not be created by special act except for municipal purposes, and in cases where; in the judgment of the legislature, the object of the corporation cannot be attained under general laws. All general laws and special acts

passed pursuant to this section may be altered from time to time or repealed." And by section 34 of chapter 606 of the Laws of 1875, under which the plaintiff derives its right, it was also declared that "the legislature may at any time annul or dissolve any corporation formed under this act."

These provisions distinguish this case entirely from those referred to in support of this proposition and urged upon the consideration of the court by the counsel for the appellant. For they qualified the contract itself made through the intervention of the charter, and reserved all the authority to the legislature which may be required to change the contract in any of its essential features or abrogate it altogether.

The right to make that reservation, and through it control the powers of the corporation, was conceded in the opinion of Mr. Justice STORY in the case of *Dartmouth College* v. *Woodward* (4 Wheat., 712). This point was also directly presented in *Tomlinson* v. *Jessup* (15 Wall., 454), where the charter of the corporation was subjected to a similar general act to that forming a part of the Revised Statutes of this State, and it was held by the court that "the object of the reservation and of similar reservations in other charters, is to prevent a grant of corporate rights and privileges in a form which will preclude legislative interference with their exercise if the public interest should at any time require such interference. It is a provision intended to preserve to the State control over its contract with the corporators, which without that provision would be irrepealable and protected from any measures affecting its obligation."

In *Miller* v. *The State* (Id., 478), the provision inserted in the Constitution of this State in 1846, over this subject, was considered by the court, and it was held that "where such a provision is incorporated in the charter it is clear that it qualifies the grant and that the subsequent exercise of that reserved power cannot be regarded as an act within the prohibition of the Constitution." (Id., 495.)

These cases very clearly and distinctly sustain the right of the legislature of this State to alter, change or entirely abrogate the charters of private corporations, even though they are to be considered and held to be contracts between the State and the corporators.

The purpose and design was to retain complete authority in the legislature over all such contracts, and so far as they created corporate franchises to subject them to the action of subsequent legislation. And the act of 1884, therefore, cannot be considered as obnoxious to or conflicting with this prohibition of the Constitution of the United States. It may impair corporate charters, but as the right to impair has been reserved and secured to the legislature the effect of the act can neither be questioned nor restrained by reason of that circumstance.

The authorities sustaining this power of the legislature are not in conflict with the two recent cases decided by the Supreme Court of the United States, which have been supposed to sustain this appeal. For in the first of those cases it is distinctly stated in the opinion that the authority of the State of Louisiana in the premises had not been at the time limited by her own organic law. While in the other case a statute had been enacted by the legislature of the State of Kentucky, declaring that all charters and grants of, or to, corporations, or amendments thereof, and all other statutes shall be subject to amendment or repeal at the will of the legislature, unless a contrary intent be therein plainly expressed. This statute was held to be inapplicable to the case of the charter then under consideration by the court, for the reason that a contrary intent, than that mentioned in this provision, had been plainly expressed by the legislature in the charter of the corporation, and for that reason it was held by the court that it was not subject to amendment, repeal or alteration at the will of the legislature under the authority of the general act of 1856.

The order from which the appeal has been taken was right and should be affirmed, with the usual costs and disbursements.

BRADY, J., concurred.

DAVIS, P. J. :

I concur in the opinion of DANIELS, J., on each of the grounds discussed, but particularly on the constitutional question presented in the case.

Under the Constitution of the State, the legislature has no power to make with any corporation a contract, either in its charter or in the act incorporating it, or by any other form of legislation which

can prevent a subsequent legislature from altering, modifying or wholly abrogating its charter. The provisions of the Constitution, in that regard, enter into every special law creating a corporation and every general law authorizing such creation, so that the legislative power to alter, modify and repeal becomes a part of the contract made with the corporation, as fully as though expressed in the charter or act of incorporation. If by any provision of the charter it should be declared that the legislature shall have no power to repeal, modify or alter the charter, that provision would be nugatory under the Constitution of the State, because in violation thereof, and in its place the courts would be called upon to substitute and enforce the mandate and contract of the Constitution, whenever a subsequent legislature thought proper to act in conformity to its provisions, or whenever the question of the validity of the charter should arise in any form. The acceptance of a charter or act of incorporation by the corporation it creates, is, by force of the Constitution, an acceptance of the contract on its part that the legislature shall have and may exercise the power of modification or repeal, at its pleasure. To what extent an absolute repeal of the charter of a corporation *annulling its power to be and to act* would affect its existing obligations, and in what manner its property shall be preserved and applied, to the benefit of its creditors, are questions not necessary here to be discussed.

There can be no doubt, however, that in case of such a repeal without special provisions touching such debts and property, the jurisdiction of a court of equity would at once attach to such extent as to invest the court with a title in trust, to be administered for the benefit and protection of creditors, and all others having equitable interests therein.

BRADY, J., concurred.

Order affirmed, with ten dollars costs and disbursements.