## THE SHILOH TURNPIKE COMPANY, PROSECUTOR, v. GEORGE BATES ET AL., RESPONDENTS.

Submitted March 18, 1910—Decided June 13, 1910.

1. The sixth section of the General Corporation act of 1846 (*Nix. Dig., p.* 168), providing that "the charter of every corporation which shall thereafter be granted by the legislature shall be subject to alteration, suspension and repeal, in the discretion of the legislature," operated as effectively in reserving the rights of alteration, suspension and repeal as if it had been inserted in each charter thereafter granted.

2. Section 1 of the "Act relating to turnpike companies" (*Pamph. L.* 1882, *p.* 29), as amended by *Pamph. L.* 1892, *p.* 194, prescribing a mode of procedure against a turnpike company for failure to maintain its road, superseded a similar but not identical method of procedure contained in the charter of prosecutor granted in 1866, and therefore subject to the above provision of the Corporation act.

3. In view of the substantial similarity of procedure and identity of remedy provided both in the charter and the act of 1892, the latter act is not unconstitutional as depriving prosecutor of property without due process of law, though the procedure be summary in its nature; such a procedure being agreed to by prosecutor in accepting its charter.

4. The complaint and notice in this case sufficiently specify the character of the defects in the road; and also sufficiently specify the particular part of the road complained of, though the complaint stated that the entire road was defective.

---

On *certiorari.*

Before Justices GARRISON, SWAYZE and PARKER.

For the prosecutor, *Walter H. Bacon.*

For the respondents, *Hampton & Fithian.*

The opinion of the court was delivered by

PARKER, J.  The order and proceedings brought up by this writ rest upon section 1 of the "Act relating to turnpike companies." *Pamph. L.* 1882, *p.* 29; *Gen. Stat., p.* 3695, as amended by *Pamph. L.* 1892, *p.* 194; *Gen. Stat., p.* 3696, *pl.* 42. For a better understanding of the case, it is advisable to insert the section at length. It is as follows:

"That if any turnpike company shall not keep its road and bridges in repair, it shall be the duty of any judge of the court of common pleas of the county in which said road or the part thereof complained of, or bridge, is situated, upon complaint being made to him, in writing, signed by ten freeholders, residents on the line of said road, within said county, stating the bridge or part of the road that is out of repair, and specifying the particular defect, and after five days' notice in writing to said company, specifying the particular part of the road or bridge, and the particular defect complained of, and after hearing the parties, if the said company shall have continued to take toll on that part of the road so out of repair, after being notified as aforesaid, without having first amended or repaired the bridge or part of the road complained of, to appoint under his hand and seal, three judicious, disinterested freeholders of the county in which said road, or the part thereof complained of, or bridge, is situated, not residing in any township, borough, or ward through which said road passes, who, having been duly qualified according to law, to act impartially in the case, shall proceed to view and examine the said part of the turnpike road or bridge so complained of, and report to the said judge, in writing under their hands and seals, or under the hands and seals of any two of them, whether it be in such state as the law requires it to be kept, and if the report be unfavorable to said road, the said judge shall immediately, in writing under his hand and seal, order the keeper or keepers of the gates or turnpikes to keep open the same until otherwise ordered; and if said keeper or keepers shall, notwithstanding the order of the said judge to open

said gates or turnpikes, exact toll of travelers, the said company shall for each offence forfeit and pay ten dollars, to be sued for by any person who shall prosecute for the same, in an action of debt, with costs of suit; and the said judge shall be allowed for his services one dollar, and the persons appointed one dollar each, to be paid by the company; and upon satisfactory proof before the said judge, that said company shall have repaired or amended said road or bridge in the particular complained of, he shall by license, under his hand and seal, directed to the toll gatherers, permit the gates or turnpikes to be shut, and the toll collected as before, and the said fee shall be allowed and paid as before directed, but if, on the view before mentioned, the report of the persons appointed, or a majority of them shall be in favor of the company, the same fees shall be allowed as before prescribed, and be paid by the persons making the complaint."

Pursuant to this statute, ten freeholders who were qualified as prescribed, made and signed a written complaint to the court specifying the parts of the road complained of as:

"All of the said turnpike road from the point where the Salem county line crosses the public road from Shiloh to Marlborough, to the western end of Broad street in the city of Bridgeton."

And the alleged defects thus:

"And that the particular defects in the said parts of said turnpike road are that said parts are full of holes and ruts and covered with sand and are not sufficiently arched and drained to make and keep the same dry."

Upon notice of this complaint as prescribed by the statute, and hearing thereon, the Court of Common Pleas made an order appointing three freeholders to view the part of the road complained of; and at this point the *certiorari* was allowed.

The first and second reasons invoke the charter of the turnpike company, prosecutor (*Pamph. L.* 1866, *p.* 989), and especially the nineteenth section thereof, as constituting an irrepealable contract and thus affording prosecutor immunity from attack under the act of 1882. The nineteenth section provided a procedure consisting of complaint, appointment of

commission to view the road and opening of gates on an adverse report, very much as enacted by the acts of 1882 and 1892. We need not quote the entire section. For present purposes, it is enough to say that by the Corporation act of 1846, section 6 (*Rev. Stat., p.* 136 *et seq.*), it was enacted that the charter of every corporation; which should thereafter be granted by the legislature, should be subject to alteration, suspension and repeal, in the discretion of the legislature. This provision in effect became a part of every charter thereafter granted, to which, by its terms, it was applicable. *State, Morris and Essex Railroad,* v. *Commissioner of Railroad Taxation,* 8 *Vroom* 228, 237, and cases cited; *Tomlinson* v. *Jessup,* 15 *Wall.* 454. The prosecutor's charter was therefore no protection against the act in question and its cognate provisions were superseded thereby.

Next it is claimed that the complaint and the notice given in pursuance thereof, are not specific with respect either to the parts of the road complained of or as to the nature of the alleged defects therein. We understand these documents to charge that the whole road within certain limits is in bad order, and that it is full of holes and ruts, covered with sand, and insufficiently arched for drainage. Prosecutor's claim is tantamount to a demurrer, and like a demurrer must for present purposes be taken as conceding the facts properly alleged. We regard the complaint as clearly specific on the character of the defects; and if the whole road is in fact out of repair, we can see no better way of stating that fact. In *Braden* v. *Berry,* 20 *Wend.* 55, it was said that if the whole road be out of repair it must be so stated *in totidem verbis.* That has been done in this case.

Finally it is said that the act of 1892 is unconstitutional, in that it subjects prosecutor to a summary inquiry which may result in opening its road to the public as a free road, without any right to a trial by jury, or of appeal, thus depriving it of its property without due process of law.

The answer to this is that a procedure substantially of this character is part of the very charter under which prosecutor was organized. It was at that time an established precedent

in turnpike charters. *State* v. *Williamstown and Good Intent Co., 4 Zab.* 547 (charter dated 1852); *State, Mead, prosecutor,* v. *Trenton and Allentown Turnpike Co., 5 Vroom* 182 (charter dated 1856). Many others of similar character exist. *Pamph. L.* 1837, *p.* 283, § 13; *Pamph. L.* 1852, *p.* 440, § 13; *Pamph. L.* 1853, *p.* 148, § 14; *Pamph. L.* 1854, *p.* 59, § 13; *Pamph. L.* 1855, *p.* 716, § 14; *Pamph. L.* 1856, *p.* 119, § 18; *Pamph. L.* 1858, *p.* 375, § 19; *Pamph. L.* 1861, *p.* 416, § 12; *Pamph. L.* 1863, *p.* 261, § 18; *Pamph. L.* 1866, *p.* 498, § 14; *Id., p.* 742, § 19; *Id., p.* 796, § 19. *Hood's Index* (ed. 1905), 1077 *et seq., tit.* "*Turnpike Companies.*" It appears in "An act authorizing the formation of plank road companies" (*Pamph. L.* 1852, *p.* 95; *Rev.* 1877, *p.* 827) as section 21. See *Bergen Turnpike Co.* v. *State,* 1 *Dutcher* 554. No doubt some good reason existed for so drastic and summary a remedy. At all events, a reading of section 19 of prosecutor's charter, already cited, will show that the same remedy was given to the public as by the act of 1892, with somewhat less required by way of procedure:

Complaint by ten freeholders along the line of the road is not required; simple "complaint" is sufficient. The charter does not say definitely that such complaint must be in writing, or that it shall specify the part of the road complained of, or the character of the defects. The complaint is to be made, not to the Common Pleas, but to a justice of the peace "who may be disinterested." No notice or hearing is required, but the justice appoints forthwith three of the township committee as viewers. The penalty for disobedience of the order to open gates is $20 instead of $10, and so on. It is obvious that the act of 1892 is much more favorable to the company in its provisions; and the prosecutor therefore cannot be heard to complain when the legislature has substituted this latter act for the section accepted by prosecutor as part of its original contract with the state; especially when, as we have already seen, the right to alter or even wholly repeal the charter was reserved.

The order and proceedings brought up are affirmed, with costs.