THE CITY OF ST. LOUIS, Respondent, *v.* BOATMEN'S INSURANCE AND TRUST COMPANY, Appellant.

1. *Revenue, license with view to — Municipal corporation.* — A right to license an employment does not imply the right to charge a license fee therefor with a view to revenue, unless such seems to be the manifest purpose of the power. But the authority of the corporation will be limited to such a charge for the license as will cover the necessary expense of issuing it, and the additional labor of offices and expenses thereby imposed.

2. *Revenue — Corporations — Insurance companies — St. Louis, city of, can not impose tax for revenue.* — The power given to the city of St. Louis in its charter to license insurance companies (Sess. Acts 1867, p. 65, art. IV, subd. 45) does not authorize the imposition of a tax for revenue.

3. *Revenue — Taxation — Clause of charter withdrawing corporation from operation of general law does not do away with taxing power.* — A clause in the act incorporating the Boatmen's Insurance and Trust Company of St. Louis, which withdrew it from the operation of the general law of 1855 relating to corporations, simply guaranteed it against alteration and repeal, and in nowise granted it immunity from taxation.

When the charter is silent on the subject of taxation, unless there is some contract to be impaired where there is a consideration given, it will never be presumed that the Legislature divests itself of the power to tax. The surrender of such an important prerogative is not to be deduced by implication.

*Appeal from St. Louis Circuit Court.*

*Ewing & Holliday*, for appellant.

I. The power to license merely does not confer the right to impose a tax for the purpose of revenue. (Essex v. Barber, 2

Halst. 64; Kip v. City of Patterson, 2 Dutch. 301; City of Cincinnati v. Bryson, 15 Ohio, 625.)

II. It is submitted that the clause of the city charter in question impairs the obligation of the contract created by the charter of defendant, and is an infringement of its vested rights. The power to alter, suspend, or repeal this charter is expressly taken away by the ninth section thereof. (R. C. 1855, art. I, § 7, p. 371; Dartmouth College v. Woodward, 4 Wheat. 518; Binghamton Bridge Co. v. State, 18 Conn. 53; Cone v. New Bedford Bridge, Gray, 339; 7 Ind. 59; Pacific R.R. v. Renshaw, 18 Mo. 214; 22 Ind. 291.)

*McGinnis*, and *Woerner & Kehr*, for respondent.

I. The power to license, when conferred by the Legislature of a State on a municipal corporation, is generally, if not universally, looked upon as a power to impose a tax on the franchise or an excise. (The City of Cincinnati v. Bryson, 15 Ohio, 625; Lucas *et al.* v. Lottery Commissioners, 11 Gill. & Johns. 605; Boston v. Schaefer, 9 Pick. 415; Perdue v. Ellis, 18 Ga. 586; City of Louisville v. Kean *et al.*, 18 B. Monr. 9; Bennett v. Birmingham, 31 Penn. St. 15; Merriam v. City of New Orleans, 14 La. Ann. 318; Sacramento v. Stage Co., 12 Cal. 134; Sacramento v. Crocker, 16 Cal. 119; Chilvers v. The People, 11 Mich. 43; Burlington v. Keller, 18 Iowa, 59 *et seq.*) In Missouri this view is accepted by the courts without hesitation. (Simmons v. The State, 12 Mo. 268; The State v. Hereford, 13 Mo. 3; Simpson v. Savage, 1 Mo. 359; City of Independence v. Noland, 21 Mo. 395; State v. Whittaker, 33 Mo. 475; Harrison v. The State, 9 Mo. 527; Glasgow v. Rowse, 43 Mo. 490.) But there is express authority in the charter to tax the franchise of corporations or individuals, independent of the authority to license. Under the charter provision the city has power to levy not only taxes upon property made taxable by law for State purposes, but also " such other taxes as shall be provided for by law of this State."

II. Appellant's charter contains no express or implied exemption from taxation by the city, and is therefore liable under the

ordinance in question.    (Portland Bank v. Apthorp, 12 Mass. 264–5 ; Providence v. Billings & Pittman, 4 Pet. 514 ; Eastern Bank v. The Commonwealth, 10 Barr, Pa., 442 ; Gordon v. Appeal Tax Court, 3 How. 133 ; Gordon's Ex'r v. Mayor, etc., of Baltimore, 5 Gill. 231 ; Attorney-General v. Bank of Charlotte, 4 Jones, 287 ; Union Bank of Tennessee v. The State, 9 Yerg. 490 ; State of New Jersey v. Bury, 2 Harris, 83 ; Johnson v. Commonwealth, 7 Dana, 342 ; Bank of Illinois v. The People, 4 Scam. 304.)

WAGNER, Judge, delivered the opinion of the court.

This was a proceeding instituted in the Police Court of the city of St. Louis, against the defendant, for violation of city ordinance in refusing to take out a license as required ; and judgment being given for the plaintiff, the defendant appealed to the Criminal Court, where the judgment was affirmed.

The same ordinance comes up for construction that was passed upon in the case of The City of St. Louis v. The Independent Insurance Company of Massachusetts, *ante*, p. 146, and the difference between the two cases is that that was a foreign insurance company, while the defendant here is a home company chartered by the Legislature of this State.    The special provision of the statute, which we held in that case was not repealed, applied exclusively to foreign insurance companies, and therefore has no application to the present case.

The counsel for the appellant assumes two positions in this court : first, that the power given to the city in its charter to license does not authorize the imposition of a tax for revenue ; and, secondly, that by the act of incorporation granted by the State, the defendant is exempt from taxation in the manner here attempted.

1. By the forty-fifth subdivision of the section, the charter merely gives the power " to license all insurance companies," etc. The uniform course of decision is that a right to license an employment does not imply the right to charge a license fee therefor with a view to revenue, unless such seems to be the manifest purpose of the power ; but the authority of the cor-

poration will be limited to such a charge for the license as will cover the necessary expenses of issuing it, and the additional labor of offices and expenses thereby imposed. A license is issued under the police power, but the exaction of a license fee with a view to revenue would be an exercise of the power of taxation; and the charter must plainly show an intent to confer that power, or the municipal corporation can not assume it. (Cooley Const. Lim. 201; State v. Roberts, 11 Gill. & J. 506; Mays v. Cincinnati, 1 Ohio St. 268; Cincinnati v. Bryson, 15 Ohio, 625; Freeholders v. Barber, 2 Halst. 64; Kip v. Patterson, 2 Dutch. 298; Bennett v. Birmingham, 31 Penn. Stat. 15; Chilvers v. People, 11 Mich. 43; Mayor, etc., v. Yuille, 3 Ala. 144.) In the case of Freeholders v. Barber, 2 Halst. *supra*, it was held that an act establishing and confirming the charter of the borough of Elizabeth, which authorized the Court of General Sessions to license innkeepers, did not thereby confer the power to impose a tax on them for the license. In Cincinnati v. Bryson, *supra*, it was decided that the right to license and regulate conferred no taxing power, and the court in their opinion say: " In general, the authority to license carries with it the power to impose the terms and conditions upon which it shall be granted. It would seem that the right to license and regulate, and to provide by ordinance for the carrying into effect the powers expressly conferred upon them, are sufficient to justify all reasonable acts incident to the business."

The court upheld the ordinance on the ground that the license fee was a reasonable act for regulating the business, and not an attempt to exercise the taxing power for purposes of revenue.

In the case of Boston v. Schaffer (9 Pick. 415), the suit was on a bond of $1,000, in consideration of a license for a theater. It was objected that the power to license conferred no authority to tax. The court sustained the authority upon the peculiar phraseology used and the manifest intention of the Legislature. They used this language: " It is objected that the statute of 1821, ch. 110, gives no power to the city to exact money for the license. The authority to the mayor and aldermen is to license ' on such terms and conditions as to them may seem just and rea-

sonable.' Though the exacting of money is not expressly mentioned, it is not excluded by these general words, and was doubtless in the contemplation of the Legislature; for in the statutes of 1825, ch. 152, § 1, by which the selectmen of each town are empowered to license theatrical exhibitions, the same language is used, and in section 3 it is provided that *all moneys* which shall be received for such licenses (if any) shall be appropriated, etc. This is a legislative construction of the first statute."

The words "to license" may imply the power to tax when such is the manifest intention; but taken disconnected and alone they will not generally confer that authority. The intention may be readily gathered by referring to the powers given the city in the section we are now considering. It is one of enumerated powers, and grants authority to the mayor and city council to legislate upon the general police of the city. In the eighteenth subdivision it confers authority "to license, *tax*, and regulate auctioneers, grocers," etc. The nineteenth gives power "to license, *tax*, and regulate horse railroad cars, hackney carriages," etc. The twenty-first, "to license, *tax*, regulate, and suppress theatrical and other exhibitions, shows, and amusements." Twenty-second, "to license, *tax*, restrain, prohibit and suppress billiard tables," etc. But in the forty-fifth the power is simply "to license insurance companies."

These provisions contained in the same section abundantly show that the mind of the lawgiver was directed to the subject, and that the power to tax was given where it was intended to be exercised, and that it was withheld where it was not so expressed. And it has since been so construed by the Legislature, for in the revised city charter, approved March 4, 1870, express power is given to license, tax, and regulate insurance companies. (Adj. Sess. Acts 1870, p. 164.)

The defect was obviously seen, and therefore supplied. In my opinion, under the charter of 1867, authority did not exist for the imposition of the tax under the name of license, as set out in the ordinance.

2. It is secondly contended that the defendant's charter exempts it from this taxation, but I have failed to find any provision in

the act of corporation to sustain that view. There is a clause in it which withdraws it from the operation of the general law relating to corporations, contained in the revised statutes of 1855; but that simply guarantees it against alteration and repeal, and in nowise grants it an immunity from taxation. The act of incorporation is silent on the subject of taxation, and where that is the case, unless there is some contract to be impaired where there is a consideration given, it will never be presumed that the Legislature divests itself of this high attribute of sovereignty, the power to tax. The surrender of such an important prerogative is not to be deduced by implication.

In a case entirely similar to this (Providence Bank v. Billings, 4 Pet. 514) the question was examined by Chief Justice Marshall and decided with his accustomed clearness and power. The Providence Bank had obtained a charter from the Legislature of Rhode Island in 1791; in 1822 the Legislature passed an act imposing a tax on every bank in the State, in addition to the tax on its property. The bank resisted the payment of this tax on the ground that the act which imposed it was unconstitutional as impairing the obligation of a contract created by its charter of incorporation. After judgment against the bank in the Court of Common Pleas, and also in the Supreme Court of Rhode Island, the case was taken by writ of error to the Supreme Court of the United States, where the court, speaking through the chief justice, says: "Is this contract impaired by taxing the banks of the State? The question is to be answered by the charter itself. It contains no stipulation promising exemption from taxation. The State, then, has made no express contract which has been impaired by the act of which the plaintiff complains. * * The claim of the Providence Bank is certainly of the first impression. The power of taxing moneyed corporations has been frequently exercised, and has never before, so far as known, been resisted. * * That the taxing power is of vital importance, that it is essential to the existence of government, are truths which it can not be necessary to reaffirm. They are acknowledged and asserted by all. It would seem that the relinquishment of such a power is never to be assumed. * * As the whole community is inter-

ested in retaining it undiminished, that community has a right to insist that its abandonment ought not to be presumed in a case in which the deliberate purpose of the State to abandon it does not appear. * * Would an incorporated company be exempt from this duty from the mere consequence of its charter? The great object of an incorporation is to bestow the character and properties of individuality on a collective and changing body of men. This capacity is always given to such a body. Any privileges which may exempt it from the burthens common to individuals, do not flow necessarily from the charter, but must be expressed in it, or they do not exist."

A law which seeks to deprive the Legislature of the power to tax must be so clear, explicit, and determinate that there can be neither doubt nor controversy about its terms or the consideration which renders it binding. Every presumption will be made against its surrender, as the power was committed by the people to the government to be exercised and not to be alienated. (Washington University v. Rowse, 42 Mo. 308 ; People v. Roper, 35 N. Y. 629 ; Mott *et al.* v. The Pennsylvania R.R. Co., 6 Cas. 9 ; Commonwealth v. Bird, 12 Mass. 542 ; Eastern Bank v. Commonwealth, 10 Barr, 442 ; Portland Bank v. Apthorp, 12 Mass. 264.)

As there is no contract embodied in the charter by which the defendant was incorporated exempting it from taxation, it is clear that the right to tax exists. But as the city authorities had no power at the time the ordinance was passed to impose a license tax for revenue, the judgment must be reversed.

Reversed. Judge Bliss concurs. Judge Currier, being interested in the question, not sitting.