BARNES et al. v. KORNEGAY et al.

(Circuit Court, W. D. North Carolina. August 6, 1894.)

1. CONTRACT BETWEEN STATE AND RAILROAD COMPANY—WHAT CONSTITUTES—
EXEMPTION OF PROPERTY FROM TAXATION—REPEAL—VALIDITY.
Act Gen. Assem. N. C. Jan. 27, 1849, incorporated the N. C. R. Co., with a capital stock of $3,000,000. The state of North Carolina subscribed for two-thirds of the shares, and paid for them with 6 per cent. bonds. The other shares were taken by private persons. Act Gen. Assem. N. C. Feb. 14, 1855, amended such charter by increasing the capital stock to $4,000,-000, because the original amount was insufficient to complete the road, and the state subscribed for the additional shares, paying therefor with 6 per cent. bonds. Section 5 provided that all real estate held by said company for right of way, stations, and workshops should be exempt from taxation until the dividends of profits should exceed 6 per cent. per an-

num. *Held*, that the exemption provided by section 5 was a part of the contract between the state and the corporation, and that acts of the general assembly of such state repealing such section, and providing for the listing of such property for taxation, were void, as impairing the obligations of a contract. Tomlinson v. Jessup, 15 Wall. 458, applied.

2. SAME—DIRECTORS—AUTHORITY TO LIST PROPERTY FOR TAXATION.
A majority of the board of directors of such corporation cannot list for taxation the property exempted by such act, against the protest of the minority stockholders.

3. SAME—INJUNCTION—BILL BY STOCKHOLDERS—WHEN WILL LIE.
Where a majority of the directors of such corporation, who represent the state, have done everything they can as a board to surrender or destroy such exemption in the face of the protest of the minority, and the governor and the state desire such surrender, the minority stockholders may maintain a bill to enjoin such corporation and the president and individual directors from procuring such property to be taxed, without first going to the board of directors and endeavoring to induce them to prevent such taxation.

Alfred W. Haywood and R. H. Battle, for complainants.
William R. Allen, for defendants.

Before SIMONTON, Circuit Judge, and DICK, District Judge.

SIMONTON, Circuit Judge.   This bill is filed by persons, citizens of states other than North Carolina, holding stock in the North Carolina Railroad Company, against the president of said company, the individuals directors therein, and the corporation itself.   The prayer of the bill is for an injunction upon this statement of facts:   The North Carolina Railroad Company was incorporated by the general assembly of that state on 27th January, 1849.   It was a part of a great scheme of internal improvement, and the railroad for the construction of which the company was formed was the connecting link between the eastern and western sections of the state.   The original capital was fixed at $3,000,000, divided into 30,000 shares at $100 each, and the state of North Carolina subscribed for 20,000 shares, giving therefor state bonds, bearing interest at the rate of 6 per cent. per annum, payable semiannually.   The remaining 10,000 shares were taken by private parties.   It having been ascertained that the amount of capital stock was insufficient to complete and equip the road, whose terminus was Charlotte, N. C., the general assembly, on 14th February, 1855, amended the original act of incorporation by increasing the capital stock to $4,000,000,—that is to say, by 10,000 shares of $100 each; and for these shares the state became the subscriber, paying therefor bonds bearing interest at 6 per cent. per annum, payable semiannually, the shares so taken by the state being preferred stock to the dividends on which net earnings should be first applied.   In this act of 1855 was inserted the following section:

"Sec. 5. Be it further enacted that all real estate held by said company for right of way, for station places of whatever kind, and for workshop locations, shall be exempt from taxation until the dividends of profits of said company shall exceed six per centum per annum."

The affairs of this corporation are managed by a board of 12 directors, 8 of whom represent the stock of the state, and 4 of whom

represent the stock of the private stockholders. The state directors are appointed by the governor; the private stockholders elect their own directors. In 1893, upon the recommendation of the governor, a bill was introduced into the general assembly of North Carolina, repealing the fifth section of the act of 1855 (amending the charter of this railroad company). This bill failed to pass, but in lieu thereof the general assembly, at the same session, in the act to raise revenue, inserted a section:

"Sec. 6. Whenever in any law or act of incorporation granted under the general law or by special act, before or since the 4th July, 1868, there is any limitation or exemption of taxation, the same is hereby repealed, and all the property and effects of all such corporations shall be liable to taxation."

At the same session, also, provision was made in the act to provide for the assessment of property and the collection of taxes, for the listing of their property for taxation by all railroads and other corporations doing business in the state of North Carolina with the railroad commissioners. After the passage of these acts the majority of the board of directors of the North Carolina Railroad Company, if not under the instruction, certainly with the approval, of the governor of the state, adopted, against the vote of the representatives of the private stockholders, a resolution instructing the president of the company to report to the board of railroad commissioners of North Carolina the entire property of the North Carolina Railroad Company for taxation, and that that board be empowered forthwith to assess for taxation all the real estate held by the said railroad company for right of way, for station places of whatever kind, and workshop locations, and all other property of the said railroad, in like manner as the property of other railroads in the state is assessed, and to report said assessment to the treasurer of the state and the proper municipal authorities, in order that state and municipal taxes may be levied thereon. This is charged in the bill, and admitted in the answer, with the further admission that it is the purpose of the president to obey this resolution, unless restrained by order of this court. The bill seeks an injunction against this proposed action on the part of the president and the representatives of the state on the board of directors. It claims that this clause of exemption is a part of the contract between the state and the corporation, and that, inasmuch as no power to repeal, alter, or amend the charter was reserved to the state, any act on the part of the state seeking to repeal or modify this exemption would impair the obligation of a contract, and be void. It also claims that this exemption is of great value to the corporation, enhancing the market price of its stock, and that it is not within the power of the board of directors, or even of the majority of the stockholders, to surrender or destroy it. The answer denies that this exemption is a part of the contract between the state and the company; avers that the exemption is not only of no value, but is a detriment; that the dividends of profits of the said company now exceed 6 per centum per annum; and that, inasmuch as all other railroad companies which formerly held similar exemptions have surrendered and waived the same, fair dealing and high public

policy demand that the corporation in which the state herself owns three-fourths of the stock should follow their example.

The last of these considerations this court cannot discuss. Its duty is to ascertain the rights, legal and equitable, of the parties before it. If these rights be ascertained, it is for the parties themselves to say whether they will pursue or waive them. The second consideration presents questions of fact, and can be finally determined only by a reference to a master. We deal with the first consideration. Is this provision of the amended charter, exempting certain of the property of the railroad company from taxation, a part of the contract between the corporation and the state? The learned counsel who represented the defendants at the hearing, in an argument characterized by great ability and acumen, insisted that the private stockholders had no part in this exemption; that there was no consideration moving towards them, for that all the 10,000 shares held by them were provided for under the original charter, and no one but the state took the new shares under the act of 1855. Even if we could entertain this argument, it seems to us that there was a consideration. In the original enterprise the state had entered into copartnership with the private stockholders, they and the state embarking their common capital in the accomplishment of a common purpose. It was found that the capital was insufficient to complete the enterprise and to reap its fruits. There was danger of total loss. The state consented to furnish the additional capital necessary to prevent this loss, provided that such additional capital would be placed in a secure position as preferred stock; and this concession, having been made, exempted the whole of the realty from taxation. But the contract (if it was a contract) was not with the stockholders, but with the entity,— the corporation. And each stockholder, by virtue of his interest in the corporation, had a right to this exemption as a part of the property of the corporation, which could not be given away or destroyed without his concurrence. The fact that the exemption is by an amendment of the charter even of an equipped corporation does not detract from its character as a contract. A fortiori it will not defeat its character as a contract if the completion of the work of the corporation, its final success, its life, depends on the amendment. The precise question arose in Tomlinson v. Jessup, 15 Wall. 458. A railroad company had obtained its charter and completed its road under an act of the legislature containing no exemption from taxation. Some years afterwards it obtained an amendment to its charter, and in the amending acts was the exemption. The state adopted a new constitution, and in that constitution it was sought to repeal all such exemptions. The supreme court of the United States, having these facts under consideration, says:

"In these cases, and in others of a similar character, the exemption is upheld as being made upon considerations moving to the state, which gives to the transaction the character of a contract. It is thus brought within the provisions of the federal constitution. In the case of a corporation the exemption, if originally made in the act incorporating it, is supported upon the consideration of the duties and liabilities which the corporation assumes by accepting the charter. When made, as in the present case, by an amend-

ment of the charter, it is supported upon the consideration of the greater efficiency with which the corporation will thus be enabled to discharge the duties originally assumed by the corporation to the public, or of the greater facility with which it will support its liabilities and carry out the purposes of its creation."

The case seems on all fours with that at bar, and no other citation is necessary. This being so, the proposed action of the directors and the president is either the surrender of a clear legal right of the corporation in the contract to an unconstitutional act of the legislature, or it is the waiver and surrender of this right, each of which is beyond the power of the directors. At this stage of the case the restraining order must be continued. It has been urged that this bill will not lie at the instance of the stockholders, because it does not appear that all efforts have been exhausted to obtain action on the part of the corporation. But it cannot be denied that the state, which owns three-fourths of the stock, and which at all stockholders' meetings casts the vote of this stock as a unit, desires the surrender or destruction of this exemption; that the governor, induced by his convictions of public policy and fair dealing, has advised and promoted it; that the directors who represent the state have done everything that the board can do to accomplish it in the face of a protest on the part of the minority, who represent the private stockholders. Shall we require these minority stockholders to go to the board of directors in order to induce them to institute proceedings to overturn their own acts, or to a meeting of stockholders to ask that the action of the directors, who represent the wishes of three-fourths of the stock, be annulled? This case does not come within the ninety-fourth rule of equity, nor is it within the mischief of Dodge v. Woolsey, 18 How. 331. See Fost. Fed. Pr. p. 27, § 12; Id. p. 161, § 27.

Let an order be prepared granting an injunction as prayed in the bill, to be in force until the further order of this court after a hearing on the merits of this case, and referring the cause to the standing master, to take and report all the evidence in the cause.

DICK, District Judge, concurred.